Roy Kenneth SPARKS,
Petitioner–Appellant,

v.

Dewey SOWDERS, Warden, Northpoint
Training Center, Respondent–Appellee.

No. 87–5749.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1988.

Decided Aug. 4, 1988.

J. Kirk Griggs, II (argued), Lexington,
Ky., for petitioner-appellant.

David Armstrong, Atty. Gen., Frankfort,
Ky., Joseph R. Johnson (argued), for respondent-appellee.

Before KENNEDY and JONES,
Circuit Judges, and CONTIE, Senior
Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner, Roy Kenneth Sparks, appeals
from the district court's denial of his petition
for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. For the following
reasons, we REVERSE the judgment of
the district court and REMAND for an
evidentiary hearing.

I.

Petitioner was charged with murder and
first degree robbery by a Carter County
grand jury in the commonwealth of Kentucky.
The case went to trial in March of
1984. After three days of trial, during
which the commonwealth introduced a tape
recording of petitioner discussing his participation
in the murder in great detail with
a police informant, petitioner changed his
plea to guilty and was sentenced to thirty-five
years in prison on the murder charge.
The first degree robbery charge was dismissed.

In his pro se memorandum which accompanied
his petition, petitioner made the following
allegations concerning his guilty
plea.

> On March 15, 1984, the third day of
> petitioner's trial, after defense counsel
> had already advised petitioner that if he
> didn't plead guilty he would get life without
> parole, petitioner was informed that
> his mother was in the hospital in critical
> condition. Petitioner's counsel then advised
> him that if he didn't plead guilty he
> may never see his mother again. At this
> point petitioner was confused and under
> duress and finally agreed to plead guilty
> for a recommendation of thirty-five (35)
> years.[1]

---

1. In its first brief before this court, the commonwealth
adopted the petitioner's statement of
the facts unequivocally. However, in its brief
filed in response to the brief filed by petitioner's
court appointed counsel, the commonwealth
modified its adoption of the facts. It disavowed

Before accepting his guilty plea, the court engaged in the following colloquy:

The Court: I understand from talking with counsel and the defendant and the commonwealth attorney and the other parties involved in this action that the defendant has changed his mind and desires to enter a plea of guilty, is that correct sir?

Mr. Gailbraith: Based on the recommendation of the prosecutor, that's correct your Honor.

The Court: Mr. Sparks I understand that you desire to enter a plea of guilty to this charge, is that correct?

Mr. Sparks: Yes sir.

The Court: Have you been made any promises by anybody as to what the court would do other than the recommendation as to the sentence by the commonwealth attorney?

Mr. Sparks: No sir.

The Court: Has anyone put any pressure on you to enter a plea of guilty?

Mr. Sparks: No sir.

The Court: The plea is being made voluntarily?

Mr. Sparks: Yes sir.

The Court: Is it made because you feel like you are guilty of the charge?

Mr. Sparks: Yes sir.

The Court: Do you also understand that there is no right of appeal when you enter a plea of guilty that there is no right of appeal from that, do you understand that?

Mr. Sparks: Yes sir.

The Court: You still want to enter a plea of guilty?

Mr. Sparks: Yes sir.

The Court: Do you need any more time to discuss it with your attorney?

Mr. Sparks: No sir.

Subsequently, petitioner filed a motion to vacate his sentence alleging, *inter alia,*

that his guilty plea was invalid as being involuntary and not intelligently made and that he was denied effective assistance of counsel. The motion was denied by the trial court. The court of appeals affirmed. 721 S.W.2d 726 (Ky.Ct.App.1986). The Kentucky Supreme Court denied discretionary review.

Petitioner filed a petition for a writ of habeas corpus in district court. He raised the following grounds in his petition: that the guilty plea was not knowingly, intelligently and voluntarily entered due to the trial court's failure to inform him of the constitutional rights he was waiving by entering such a plea and that he was denied effective assistance of counsel by his counsel's "mis-advice" and failure to challenge the defective indictment.[2] In a memorandum in support of his petition, petitioner made the following assertion:

Concerning petitioner's first contention, petitioner was charged with murder and tried as a non-capital offense. Therefore, the maximum penalty was life imprisonment with the requirement of serving eight (8) years before being eligible for parole. Has [sic] petitioner been convicted by a jury and sentenced to life imprisonment he would have served eight (8) years before being eligible for parole, however, petitioner received a thirty five [*sic*] (35) sentence and he is still required to serve more than seven (7) years before being eligible for parole. Had petitioner not been advised by counsel that he would get life without parole, he would have continued with his trial.[3]

The petition was referred to a magistrate who took a totality of the circumstances approach to the issues presented, and recommended that the petition be denied. The district court took a similar approach and dismissed the petition, without holding an evidentiary hearing. Petitioner appeals from this dismissal.

any knowledge of statements made concerning petitioner's mother and disagreed with the assertion that petitioner was confused and under duress.

**2.** On this appeal, petitioner does not raise this latter claim of ineffective assistance of counsel.

**3.** At oral argument, the commonwealth represented that had Sparks been given a life sentence, he would have been eligible for parole in eight years and that given a thirty-five year sentence, he is eligible for parole in seven years.

Petitioner argues that the presentation of misinformation by his counsel denied him effective assistance of counsel and that the trial court's failure to inform him, on the record, of the fundamental rights he was waiving by entering a guilty plea violated his due process right under the fourteenth amendment.

## II.

### A.

Petitioner argues that he was denied effective assistance of counsel. He concludes that due to the misinformation provided by his counsel he decided to plead guilty instead of proceeding with the trial and taking his chances with the jury.[4] The two-part *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984), test applies to challenges to guilty pleas based on ineffective assistance of counsel.

In the context of guilty pleas, the first half of the test is met by showing that an attorney's actions were not within the range of competence demanded of attorneys in criminal cases. See *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

> The second, or 'prejudice,' requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59, 106 S.Ct. at 370 (footnote omitted).

In *Hill*, the Court was confronted with the following question: "whether petitioner is entitled to an evidentiary hearing in a federal habeas proceeding where he has alleged that his guilty plea entered in state court was involuntary and resulted from ineffective assistance of counsel." *Hill*, 474 U.S. at 60–61, 106 S.Ct. at 371–72. (White, J., concurring). The Court concluded that Hill was not entitled to an evidentiary hearing on his ineffective assistance of counsel claim because he had failed to make sufficient allegations to satisfy the prejudice prong of the *Strickland* test.

> Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted.

*Id.* at 60.

In the instant case, unlike *Hill*, petitioner has asserted and continues to assert that he would not have pleaded guilty had he been given the correct information concerning his eligibility for parole. Accordingly, we conclude that petitioner has made a sufficient allegation to satisfy the prejudice requirement of *Strickland* and warrant an evidentiary hearing. This, however, does not close the analysis, since petitioner also must allege facts which satisfy the first prong of *Strickland*.

---

4. The misstatement was the attorney's assertion that petitioner could be sentenced to life without parole. The commonwealth attacks this argument by asserting that under the circumstances—i.e., the evidence presented against him and the offer to drop the first degree robbery charge—the petitioner would have pleaded guilty even if he had not been provided the incorrect information concerning parole. In his pro se memorandum filed below, petitioner directly contradicts this assertion. In deciding not to hold an evidentiary hearing, the district court adopted the argument of the commonwealth.

Petitioner alleges that his trial counsel erroneously told him that if convicted he could receive a sentence of life without parole. It is uncontested that there is no such penalty as "life without parole" in Kentucky. Initially, we must decide whether petitioner's trial counsel's alleged misadvice concerning parole eligibility fell short of the range of competence demanded of attorney's in criminal cases.

This court has yet to decide whether erroneous advice concerning parole eligibility can amount to ineffective assistance of counsel. *See Brown v. Perini,* 718 F.2d 784, 789 n. 4 (6th Cir.1983). However, this issue has been addressed by other circuits which have held or noted that misinformation concerning parole eligibility can be ineffective assistance of counsel. *See Strader v. Garrison,* 611 F.2d 61, 65 (4th Cir. 1979) (when petitioner is grossly misinformed about parole eligibility dates by his lawyer, and he relies upon the misinformation, he is deprived of his constitutional right to counsel). *See also, Cepulonis v. Ponte,* 699 F.2d 573, 577 n. 7 (1st Cir.1983) (noting that misinformation may be more vulnerable to constitutional attack than lack of information); *Czere v. Butler,* 833 F.2d 59, 63 (5th Cir.1987) (noting without deciding that giving misinformation may satisfy the first prong of the *Strickland* test); *Hill v. Lockhart,* 731 F.2d 568, 572 (8th Cir.) (refusing to follow *Strader* because gross misinformation was not involved in the case), *aff'd by equally divided court* 764 F.2d 1279 (8th Cir.1984) (en banc), *aff'd* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Brown,* 718 F.2d at 789 n. 4 (distinguishing *Strader* on basis that the advice given by defense counsel could not be characterized as gross misadvice).

We now hold that gross misadvice concerning parole eligibility can amount to ineffective assistance of counsel.

In the instant case, petitioner alleges that his attorney advised him that he could receive the sentence of life without parole if he was convicted of murder. In reality, petitioner did not face such consequences, and would have been eligible for parole even if he were given a life sentence. Petitioner also alleges that had he been given the correct information concerning parole, he would not have pleaded guilty and would have continued with the trial. Given the petitioner's allegations, we conclude that the petitioner is entitled to an evidentiary hearing on his ineffective assistance of counsel claim.

### B.

Petitioner also argues that his plea was invalid because the trial court failed to enunciate the fundamental rights he was waiving by entering a guilty plea.

Petitioner relies on *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) for the proposition that a waiver of the important federal rights of privilege against self incrimination, right to trial by jury, and the right to confront one's accusers cannot be presumed from a silent record. *See also Roddy v. Black,* 516 F.2d 1380, 1383–84 (6th Cir.) (*"Boykin* mandates that a conviction based on a guilty plea be reversed unless the 'prosecution spread[s] on the record the prerequisites of a valid waiver' of the constitutional rights which a defendant surrenders by pleading guilty"), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975).

In *Fontaine v. United States,* 526 F.2d 514, 516 (6th Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976) this court stated that *"Boykin* does not require separate enumeration of each right waived and separate waivers as to each." "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). In viewing guilty pleas, we look at the totality of the circumstances surrounding the plea. *See Caudill v. Jago,* 747 F.2d 1046, 1050 (6th Cir.1984); *Brown v. Perini,* 718 F.2d 784, 786 (6th Cir.1983).

In deciding whether petitioner's plea was knowingly and voluntarily given, the district court made the following conclusions:

> The Court has considered the entire record and has determined that the

record indicates a knowing, intelligent, and voluntary waiver of his constitutional rights. It is obvious that the petitioner knew he was waiving the right to a jury trial and to confront witnesses when during the middle trial [sic] he decided to enter his guilty plea.

While the court did not err in finding that Sparks understood he was waiving his right to a jury trial, which was being stopped so he could plead guilty, and his right to confront witnesses, which he had been exercising, it failed to consider the effect that petitioner's counsel's alleged misadvice may have had on the knowingness and voluntariness of his plea.

Because the district court failed to consider petitioner's attorney's misstatements, we conclude that it erred when it found that the plea was knowingly and voluntarily given without conducting an evidentiary hearing. On remand, we direct the court to inquire into all of the circumstances surrounding petitioner's guilty plea in making a determination of whether the plea was knowingly and voluntarily given.

Accordingly, we REVERSE the district court's denial of the petition for a writ of habeas corpus and REMAND for proceedings consistent with this opinion.

KENNEDY, Circuit Judge, concurring.

I concur fully in part II. B of the panel's opinion that the case must be remanded for an evidentiary hearing. I write separately because I view the issue as whether a plea may be involuntary because a defendant was misadvised as to the maximum penalty he faced if convicted. There is considerable difference, in my opinion, between a life sentence with the possibility of parole and a life sentence without parole. Eligibility for parole is ordinarily only a collateral consequence of a possible sentence. In the case of a life sentence without parole, however, it is more than collateral. It is an essential and critical portion of the penalty.

As we stressed in *Pitts v. United States*, 763 F.2d 197, 201 (6th Cir.1985), "affirmative misstatements of the maximum possible sentence" are much more serious than

"a mere failure to give a defendant some information which he later claims would have affected his pleading decision.... When the maximum possible exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject."